**MARSH & McLENNAN COMPANIES, INC. AND SUBSIDIARIES,[1] Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 00–205T.

United States Court of Federal Claims.

Aug. 6, 2001.

Neal J. Block, Chicago, IL, for plaintiff. A. Duane Webber, Baker & McKenzie, Washington, DC, of counsel.

W.C. Rapp, Washington, DC, with whom was Acting Assistant Attorney General Claire Fallon, for defendant.

## *OPINION*

MILLER, Judge.

This case is before the court after argument on cross-motions for summary judgment. The issue for decision is whether the taxpayer is entitled to interest on overpayments of federal income tax for 1985 and 1986 to the date on which each overpayment was applied to satisfy a later-arising liability or to the date on which the tax was due for the year generating the liability.

---

1. Despite defendant's contention that the spelling of the case name on the complaint is immutable, the court granted plaintiff's motion to change the style of the caption to reflect the accurate spelling of plaintiff.

## FACTS

The facts are not disputed. Marsh & McLennan Co., Inc. ("plaintiff"), overpaid its 1985 federal income taxes by $275,139.00 (the "1985 Overpayment") and overpaid its 1986 federal income taxes by $3,412,083.00 (the "1986 Overpayment"). The 1985 Overpayment eventually was credited to plaintiff's 1987 tax liability. This credit was reflected in an Internal Revenue Service ("IRS") Transcript which was generated on April 11, 1994 (the "Transcript"). The Transcript shows that interest on the 1985 Overpayment was computed using an ending date of April 15, 1988. The credit itself was not applied to the 1987 tax liability until March 15, 1989. Plaintiff asserts that its 1987 tax account did not go into "debit" status until March 15, 1989. Plaintiff claims that it was this date (March 15, 1989) that should have been the ending date for the calculation of interest on the 1985 Overpayment.

Similarly, the 1986 Overpayment was credited to plaintiff's 1988 tax liability. The Transcript reveals that interest on the 1986 Overpayment was computed using two end dates: April 15, 1988, for the amount of the 1986 Overpayment credited to the 1987 account and April 15, 1989, for the amount of the 1986 Overpayment offset to the 1988 account. Plaintiff again takes the position that its 1988 tax account did not go into "debit" status until September 15, 1989. It is this date that plaintiff designates for calculating interest on $1,074,541.00 of the 1986 Overpayment. Plaintiff's 1988 tax account again went into "debit" status on March 15, 1990, on which date the remaining portion of the 1986 Overpayment was credited to the 1988 tax account. According to plaintiff, interest should have been calculated to September 15, 1989, and March 15, 1990, for the respective amounts of the 1986 Overpayment, whereas defendant holds that the April 15 ending dates for the calculation of interest are proper.[2]

---

2. Defendant actually argues that the ending dates should have been one month earlier, i.e., March 15, for each of the respective years, and that plaintiff has received excess interest payments,

## DISCUSSION

### 1. Summary judgment

Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. See RCFC 56(c). The parties agree on the amounts of income tax overpayments for 1985 and 1986, the taxable years to which the overpayments were applied, and the date on which the accrual of allowable interest on the overpayment begins under section 6611 of the Internal Revenue Code. See 26 U.S.C. ("I.R.C.") § 6611(b)(1) (2000). The only issue before the court is the date on which the accrual of allowable interest ends.

### 2. Ending date for interest on overpayments

"Tax and interest payments are creatures of statute, and such statutory provisions are to be given their plainest reasonable meaning, in implementation of the discernable intent of Congress." *Shriners Hospitals for Crippled Children v. United States,* 862 F.2d 1561, 1563 (Fed.Cir.1988) (footnote omitted).

I.R.C. § 6611, entitled "Interest on Overpayments," provides as follows:

> (b) Period.—Such interest shall be allowed and paid as follows:
>
> > (1) Credits.—In the case of a credit, from the date of the overpayment to the due date of the amount against which the credit is taken.

In advancing their respective interpretations of the phrase "due date of the amount against which the credit is taken," both parties ground their arguments on the plain meaning of the statutory language.

Defendant focuses on the "due date" in I.R.C. § 6611(b)(1), arguing that "due date" is a term defined by Treas. Reg. § 301.6611–1(h)(2) (as amended in 1994), as "the last day fixed by law or regulation for the payment of the tax (determined without regard to any extension of time)." Corresponding with this definition, defendant posits that the "due

---

see Def.'s Br. filed Dec. 6, 2000, at 4 n. 3. However, defendant acknowledges that the statute of limitation bars recovery of any overpayment.

date" for overpayment of interest is the original due date of the return for the period to which the overpayment amount was credited. For corporate, calendar-year taxpayers like plaintiff, that date is the 15th day of March following the close of the calendar year. I.R.C. § 6072(b). Defendant implores the court to "do what the statute says," Transcript of Proceedings, *Marsh & McLennan Co. v. United States,* No. 00–205T, at 24 (June 19, 2001), and import into I.R.C. § 6611(b)(1) the "due date" definition derived from the Treasury Regulation.

Plaintiff rejoins that Treas. Reg. § 301.611–1(h)(2) only provides that "in general" the term "due date" means "the last day fixed by law or regulation for the payment of tax (determined without regard to any extension of time) and not the date on which ... [the IRS] makes demand for the payment of the tax." Plaintiff argues that the latter portion of the Treasury Regulation (which defendant failed to quote) indicates that section 301.611–1(h)(2) is concerned primarily with distinguishing between (i) the date on which tax is due and (ii) the date on which the IRS notifies the taxpayer that the tax is due. Reading section 301.6111(h)(2) as only a general rule, plaintiff dismisses it as not purporting to apply to the situation at hand.

The underlying flaw in defendant's reliance on the Treasury Regulation and I.R.C. § 6072(b) is the explicit language contained in the statute. Given the existence of I.R.C. § 6072(b), it is manifest that Congress knew how to define "due date" as the 15th day of March following the close of the taxable year. Had Congress intended such a result with respect to the ending date for overpayment interest, it could have chosen explicit language to do so and included that language in I.R.C. § 6611(b)(1). More importantly, according to plaintiff, defendant's focus on "due date" ignores the remainder of the statutory language in I.R.C. § 6611(b)(1) which requires interest to the "due date of the amount against which the credit is taken."

Plaintiff's reliance on the plain language of I.R.C. § 6611(b)(1) suffers from a similar infirmity. Plaintiff focuses on one short phrase taken from I.R.C. § 6611(b)(1)—in this case "the amount against which the credit is taken." Plaintiff argues that Treas. Reg. § 301.611(h)(2), is concerned with the "due date of the return," not the "due date of the amount." Plaintiff reasons that there can be no "amount" against which the overpayment credit is taken until the IRS determines that an amount is due and unpaid. The IRS determined in this case that an amount was due and unpaid on the due date of the return against which the credit was applied. It is the actual date on which the credit amount was applied to a tax liability, *i.e.,* when the account went into "debit" status, that plaintiff argues is the "due date" under I.R.C. § 6611(b).[3] Plaintiff also links this argument to another provision of the Internal Revenue Code—I.R.C. § 6402(a), which authorizes the IRS to credit an overpayment of one tax liability, including interest allowed thereon, "against any liability in respect of an internal revenue tax on the part of the person who made the overpayment." Because I.R.C. § 6402(a) authorizes the overpayment credit and the language itself predicates the overpayment credit on the existence of an outstanding "liability," plaintiff construes this provision as supporting its position.

Both parties wrest too much congressional intent from a snippet of statutory language. Plaintiff's argument ignores the remainder of the cited phrase. Plaintiff seeks to interpret "amount against which the credit is taken" without full regard to the phrase "due date." Under plaintiff's argument, the "due date" becomes wholly dependent on the IRS's accounting procedures, which have not been shown to be governed by the statutory language of I.R.C. § 6611(b)(1). In fact, I.R.C. § 6611(b)(1) does not instruct when the "amount against which the credit is taken" becomes "due." That the statute concerned with the timing of overpayment interest would be silent as to when that overpayment interest ended is a peculiar circumstance.

---

**3.** In the instant case, the date on which the 1985 overpayment credit was applied to an outstanding tax liability is March 15, 1989. The 1986 overpayment credit was applied to two separate outstanding tax liabilities on September 15, 1989, and March 15, 1990.

Plaintiff cannot point to any clear congressional intent for such an unpredictable result, instead seeking to minimize the impact of the phrase "due date." However, a plain-meaning interpretation that discounts part of the language it purports to interpret is untenable. "[S]tatutory interpretation is a 'holistic endeavor' that requires consideration of a statutory scheme in its entirety." *Vectra Fitness, Inc. v. TNWK Corp.*, 162 F.3d 1379, 1383 (Fed.Cir.1998) (quoting *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988)). "A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme .…" *United Sav.*, 484 U.S. at 371, 108 S.Ct. 626.

The parties' arguments, purblind as they may be, represent polar efforts at interpreting statutory language which is, at best, not a model of clarity, and neither interpretation yields a satisfactory result. In this instance the court turns to other available tools of statutory interpretation.

### 3. *The "use of money" principle*

Plaintiff claims that the "cornerstone" of the Internal Revenue Code's interest provisions is the "use of money" principle. Pl.'s Br. filed Feb. 5, 2001, at 12. Interest is charged to compensate one party for the time the other party had the use of its money. *See, e.g., Manning v. Seeley Tube & Box Co.*, 338 U.S. 561, 565–66, 70 S.Ct. 386, 94 L.Ed. 346 (1950). Although both parties agree that the "use of money" principle is a tool that can be used to interpret a statutory requirement, they differ sharply as to the extent to which the principle should be applied in the case at bar.

Plaintiff relies primarily on *Avon Products, Inc. v. United States*, 588 F.2d 342, 343 (2d Cir.1978), and *May Department Stores Co. v. United States*, 36 Fed.Cl. 680 (1996), to establish the "use of money" principle as the underlying concept behind the granting of interest on overpayments. The taxpayer's liability in *Avon Products* had been paid fully on the due date for payment, but subsequently became unpaid. Because the taxpayer was required to pay interest on this deficiency under I.R.C. § 6601, the court in *Avon Products* was concerned with determining when this interest should start to run: on the original due date for payment or on the date the liability subsequently became unpaid. The court settled on the latter date, holding that I.R.C. § 6601 imposes interest "when a tax becomes both due and unpaid." *Avon Products*, 588 F.2d at 344. Although the court did not explicitly tie this analysis to the "use of money" principle, plaintiff argues that the decision reaffirms the principle by holding that interest "is intended only to compensate the Government for delay in payment of a tax." *Id.* at 343.

Similarly, *May Department Stores* was concerned with the amount of interest owed by a taxpayer which originally filed returns reporting overpayments for the taxable years 1983 and 1984, but subsequently was found to be deficient with respect to those years. The Court of Federal Claims held that, at least with respect to interest owed on a tax deficiency under I.R.C. § 6601, "[a]bsent a clearly expressed legislative intent to the contrary, this court must ordinarily regard the plain. language of the statute as conclusive." *May Dep't Stores*, 36 Fed.Cl. at 688. The court concluded that interest was due from the date that the taxpayer's payment was deficient. The court specifically addressed the "use of money" principle, holding that "consistent with the 'use of money' principle followed in both *Manning* and *Avon Products*, interest on deficiencies may be charged to compensate the government for funds which it did not possess but which it rightfully should have possessed." *Id.* at 689 (footnote omitted).

These cases establish the "use of money" principle, but, as defendant cogently argues, they do so while interpreting a provision of the Internal Revenue Code that is not at issue in this case (I.R.C. § 6601), and deal with deficiency (or underpayment) interest, not overpayment interest. On these grounds defendant discounts the "use of money" principle as the guide to determining the ending date for overpayment interest.

While these cases are distinguishable, they cannot be dismissed out of hand. This is especially true because "[t]he Supreme Court

has stressed the importance of symmetry in the payment of interest." *Brown & Williamson, Ltd. v. United States,* 231 Ct.Cl. 413, 688 F.2d 747, 750 (1982) (citing *United States v. Koppers Co.,* 348 U.S. 254, 267, 75 S.Ct. 268, 99 L.Ed. 302 (1955); *Manning,* 338 U.S. at 568, 70 S.Ct. 386). Moreover, in *Brown & Williamson,* the Government based its position regarding the overpayment of interest on the "use of money" principle.

In *Brown & Williamson* the taxpayer, a foreign corporation, had withheld income tax from 1975 to 1978 at a withholding rate of 15%. This rate satisfied the tax liability owed at that time. Pursuant to a treaty effective April 25, 1980, the tax rate was reduced to 5%. The reduced tax rate was made effective as of January 1, 1975. Taxpayer accordingly sought and received refunds of almost $17.5 million for the years 1975 to 1978. Taxpayer also sought interest from the original date of payment of the refunded taxes. The IRS ruled that interest was due from the date the treaty went into effect. Thus, the Federal Circuit was required to interpret the "date of overpayment" in I.R.C. § 6611(b)(1).

The Federal Circuit relied on the past practice of the IRS, the applicable Treasury Regulation, and the discernable congressional intent to conclude that the "date of overpayment" was "the date on which [the refunded tax] originally was paid." *Brown & Williamson,* 688 F.2d at 749. Defendant argued against this conclusion, positing that "interest is payment for the use of money that [the Government] has in effect borrowed from someone else and that if the possession of the money was valid, interest on it is not due when the money is refunded because of a subsequent event." *Id.* at 750. Had the Federal Circuit adopted this reasoning, this court's inquiry would be at end. However, the Federal Circuit formulated the issue as "involv[ing] the wholly different question of a taxpayer's right to recover interest upon taxes that initially were properly paid but that were refunded as a result of a subsequent retroactive change in the tax law." *Id.* at 751. Nevertheless, *Brown & Williamson,*

like the other cases offered by the parties, is revelatory by way of analogy.

The Federal Circuit noted that "[w]hen Congress intends to deny interest on refunds, it explicitly so provides." *Id.* at 749. Although the instant case does not concern a refund, this point is well taken. Defendant cannot point to an explicit denial of interest after a given date in I.R.C. § 6611(b)(1). Furthermore, defendant's out-of-hand rejection of the "use of money" principle in this case is tempered by the position that it took in *Brown & Williamson.*[4]

Ultimately, however, an examination of the cases applying the "use of money" principle leads to the conclusion that it should play no decisive role in this case.

In *Martin–Marietta Corp. v. United States,* 189 Ct.Cl. 291, 418 F.2d 502 (1969), the United States Court of Claims discussed the "use of money" principle and attempted to evoke a guiding rationale for its application. The court began with *Manning,* an underpayment interest case, noting that it "involved the question of whether interest on a properly assessed tax deficiency is abated when the deficiency itself is extinguished by the carryback of a net operating loss sustained in a subsequent year." *Martin–Marietta,* 189 Ct.Cl. at 303, 418 F.2d at 508. The Supreme Court in *Manning* decided that the taxpayer was not entitled to a refund of the assessed interest, reasoning:

> From the date the original return was to be filed until the date the deficiency was actually assessed, the taxpayer had a positive obligation to the United States: a duty to pay its tax. For that period the taxpayer, by its failure to pay the taxes owed, had the use of funds which rightfully should have been in the possession of the United States.

*Manning,* 338 U.S. at 565–66, 70 S.Ct. 386 (citations omitted). Interpreting this language, the Court of Claims in *Martin–Marietta* focused on the "operational events" creating tax liability. *Martin–Marietta,* 189 Ct. Cl. at 304, 418 F.2d at 508. The court concluded that the factual "operational events"

---

**4.** Taken together, the above described cases demonstrate that the only rationale that informs the IRS's approach to the "use of money" principle is the maximization of tax revenue.

in *Manning* had given rise to a tax obligation to the Government. Thus, the Government had the right to the use of those funds used to pay the tax obligation. This right remained notwithstanding a later adjustment to the tax obligation that eliminated the obligation itself. The conclusion followed because "the operational fact pattern necessary to fix the taxpayer's liability already was complete." *Id.*, 189 Ct.Cl. at 303–304, 418 F.2d at 508.

The Court of Claims contrasted the *Manning* situation with that of the claimant in *Martin–Marietta*. In *Martin–Marietta* the court allowed the taxpayer interest on its overpayments, because no "operational events" had given the Government the right to the funds. Instead, it was not until an administrative decision subsequent to the overpayment year that the question of the taxpayer's liability was decided. Thus, the Government could not claim that it had the legal right to the "use of" the taxpayer's overpayment funds. *Id.*, 189 Ct.Cl. at 304, 418 F.2d at 508–509.

These cases establish that the "use of money" principle cannot be applied as broadly as plaintiff advocates. In both *Manning* and *Martin–Marietta*, the courts were focused on whether the Government had a right to use the taxpayer's funds. The *Martin–Marietta* court answered this question by examining when the liability to the Government arose. In the instant case, no such analysis can be undertaken as this case involves an overpayment that the IRS admittedly had the right to retain. While *Manning* and *Martin–Marietta* deal with the "use of money" principle generally, attempting to apply their operational events analysis does not advance resolution of plaintiff's claims.

Plaintiff has painted its "use of money" argument with a broad stroke, arguing that the principle is the cornerstone of the tax code. Such an approach obscures the fact that the "use of money" principle has not been applied to fixing the end date for the calculation of overpayment interest. The court cannot base a ruling under I.R.C. § 6611(b)(1) on the "use of money" principle

when neither the relevant caselaw nor the plain language of the statute supports plaintiff's argument.

*4. Other tools of statutory interpretation*

■ Both parties offer IRS Revenue Rulings in support of their respective positions. The Federal Circuit has held that Revenue Rulings have no binding effect on the Court of Federal Claims. *B.F. Goodrich Co. v. United States,* 94 F.3d 1545, 1550 n. 5 (Fed.Cir.1996); *Pacific Far East Line, Inc. v. United States,* 211 Ct.Cl. 71, 93, 544 F.2d 478, 490 (1976). Revenue Rulings are not accorded a presumption of correctness, but must be analyzed for consistency with the statute. *Estate of Sanford v. Commissioner of Internal Revenue,* 308 U.S. 39, 52–54, 60 S.Ct. 51, 84 L.Ed. 20 (1939); *United States v. Missouri Pac. R.R.,* 278 U.S. 269, 280, 49 S.Ct. 133, 73 L.Ed. 322 (1929). However, "they are entitled to some consideration and carry some weight, especially when the statutory language is considered ambiguous." *Farmar v. United States,* 231 Ct.Cl. 642, 655 n. 12, 689 F.2d 1017, 1024 n. 12 (1982), *rev'd on other grounds, C.I.R. v. Engle,* 464 U.S. 206, 104 S.Ct. 597, 78 L.Ed.2d 420 (1984); *Gino v. Commissioner,* 538 F.2d 833, 835 (9th Cir.), *cert. denied,* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 587 (1976). Unfortunately, the cited Revenue Rulings do little to shed light on the statutory language.

■ Plaintiff relies on Revenue Ruling 99–40, 1999–2 C.B. 441, 1999 IRB LEXIS 371, which dealt with calculating deficiency (or underpayment) interest when the taxpayer elects to apply an overpayment of tax for one year to the following year's estimated taxes (a "credit elect"). The Revenue Ruling is concerned with "the manner in which interest on a subsequently determined deficiency is computed under [I.R.C.] § 6601(a) when the taxpayer makes an election to apply an overpayment to the succeeding year's estimated taxes." *Id.* at *9. Underpayment interest calculated under I.R.C. § 6601(a) is not at issue in this case and the cited ruling cannot be analyzed for consistency with I.R.C. § 6611(b)(1).[5]

**5.** Plaintiff also relies on a Technical Advice Mem-

orandum (Priv. Ltr. Rul. 94–43–007 (May 19,

Defendant's reliance on Revenue Rulings is similarly unhelpful, as those cited merely establish the statutory history that served as a backdrop for *Avon Products*. As explained above, that case also dealt with the interpretation of I.R.C. § 6601. Defendant points out that the court "rejected the intricacies of the multiple Revenue Rulings" in *May Department Stores*. Def.'s Br. filed May 4, 2001, at 17. Thus, these Rulings are of no help in interpreting I.R.C. § 6611(b)(1).

Faced with a dearth of caselaw or applicable IRS rulings, the court fashions a decision which most comports with the statutory language and adheres to an acceptable guiding rationale. Defendant's position that the "due date of the amount against which the credit is taken" means the "due date" for the tax of the year in which the credit is taken comports more closely with the language of I.R.C. § 6611(b)(1) than does plaintiff's. Plaintiff's interpretation of "due date" would first extract "the amount against which the credit is taken" from the rest of the provision and then add the words "due and unpaid" to describe that amount. This reading would require the IRS to calculate not only each amount against which an overpayment is applied, but to also calculate interest to the date said overpayment was applied. This is an ad hoc approach that would doubtless require new procedures to be spelled out for this calculation. It would also be completely unpredictable, resulting in overpayment interest calculations performed not with regard to the statutory language itself or the operational events giving rise to a tax liability, but dependent on ministerial acts of the agency. The text of I.R.C. § 6611(b)(1) is not convincing that Congress intended such a haphazard result.

On the other hand, defendant's position that "due date" is defined by the Treasury Regulation harmonizes with the principle of predictability and comports with the statutory language. The "due date," as defined by

Treas. Reg. § 301.6611–1(h)(2), is "the last day fixed by law or regulation for the payment of the tax (determined without regard to any extension of time)." This date occurs with clockwork regularity and is easily determinable. More importantly, this date can fairly be read as the "due date of the amount against which the credit is taken." I.R.C. § 6611(b)(1). This construction, in sum, does not require an "expansive reading" of the "use of money" principle that plaintiff espouses. *Brown & Williamson*, 688 F.2d at 751; *Martin–Marietta*, 189 Ct.Cl. at 291, 418 F.2d at 502. The court concludes that Treas. Reg. § 301.6611–1(h)(2), and the thrust of the statutory language, if not its literal meaning, commend defendant's reading of I.R.C. § 6611(b)(1) and are sufficient to establish that the "due date" is "the last day fixed by law or regulation for the payment of tax (determined without regard to any extension of time)."

### 5. *Sovereign immunity*

Defendant inveighs that sovereign immunity prohibits an award of interest on the overpayment in this case, reciting the well-settled rule that "[i]n the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award." *Library of Congress v. Shaw*, 478 U.S. 310, 314, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). Defendant faults plaintiff for failing to cite any such "statute specifically authorizing the payment of interest in the circumstances of this case." Def.'s Br. filed May 4, 2001, at 5. This is a rather arch statement, considering that the majority of defendant's and plaintiff's arguments are directed to just such a statute explicitly authorizing the payment of overpayment interest—I.R.C. § 6611(b)(1). More to the point, I.R.C. § 6611(a) explicitly states that "[i]nterest shall be allowed and

---

1994), 1994 PRL LEXIS 1285), and two other private letter rulings to support an application of underpayment interest principles to the overpayment sphere. However, pursuant to I.R.C. § 6611(k)(3), written determinations of the IRS, including private letter rulings, technical advice memoranda, and other determination letters,

may not be cited as precedent. Plaintiff's reliance on Field Service Advice letters is also misplaced, as these letters are fact specific and clearly state that they are "not to be relied upon or otherwise cited as precedent." 1993 FSA LEXIS 155, 1 (Sept. 23, 1993).

paid upon any overpayment in respect of any internal revenue tax...."

As plaintiff points out, the issue in this case is not whether the United States is obligated to pay interest, but to what extent the United States is obligated to pay interest to plaintiff.[6] As the Federal Circuit held in a case addressing the rate of interest to be applied on a claim against the United States under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1994 & Supp. V 1999), a claim of sovereign immunity is "irrelevant ... where the dispute concerns not whether interest runs against the United States but how the interest is to be calculated." *J.F. Shea Co. v. United States*, 754 F.2d 338, 340 (Fed.Cir.1985). Such reasoning applies with equal force in the instant case.

## CONCLUSION

Accordingly, based on the foregoing, defendant's motion for summary judgment is granted, and plaintiff's cross-motion for summary judgment is denied. The Clerk of the Court shall enter judgment for defendant.

**IT IS SO ORDERED.**

---

6. Indeed, the Government has already paid some overpayment interest in this case and makes no claim that such interest should be refunded.