## AT & T CORPORATION & SUBSIDIARIES, Plaintiff,

v.

## The UNITED STATES, Defendant.

### No. 01–280T.

United States Court of Federal Claims.

Oct. 18, 2004.

Joseph M. Persinger, New York City, attorney of record for plaintiff.

W.C. Rapp, Washington, D.C., with whom was Assistant Attorney General Eileen J. O'Connor, for defendant.

*OPINION*

REGINALD W. GIBSON, Senior Judge.

## I. INTRODUCTION

This case comes before the court after oral argument on cross-motions for summary judgment, filed by the parties pursuant to RCFC 56. Before us is a complex and arcane issue pertaining solely to the calculation of overpayment interest, pursuant to 26 U.S.C. § 6611. Stated simplistically, we are called upon to decide whether plaintiff, AT & T, is entitled to receive overpayment interest on a portion of an overpayment to its 1978 tax year that was credited to a deficiency in its 1981 tax year, when the deficiency arose from an erroneous tentative refund to its 1981 tax year paid to plaintiff on March 25, 1985, and the effective date of the 1978 overpayment is March 15, 1985.

As explained in detail below, we find that plaintiff is not entitled to interest on the portion of its 1978 overpayment used to offset its 1981 deficiency. This is so because, as both parties stipulate, the overpayment at issue, although allocable to the 1978 tax year, arose on March 15, 1985. That is the date on which overpayment interest begins to accrue.

Further, it is undisputed that the subject portion of the 1978 overpayment was credited to plaintiff's 1981 tax account. Under these facts, we hold that the ending date for the purpose of determining overpayment interest is March 15, 1982, because we find that said date is "the due date of the amount against which the credit is taken." 26 U.S.C. § 6611(b)(1). Hence, since we find that interest did not begin accruing until three years after interest ceased accruing, plaintiff is not entitled to overpayment interest on the portion of its 1978 overpayment that was credited to its 1981 tax account in satisfaction of a deficiency therein. Resultantly, we GRANT defendant's cross-motion for summary judgment, and simultaneously DENY plaintiff's motion for summary judgment.

## II. FACTUAL BACKGROUND

This dispute centers primarily on three tax years: 1978, 1981, and 1984. As of March 15, 1979, the date on which plaintiff's taxes for the 1978 tax year were due, no portion of the overpayment currently at issue existed in plaintiff's 1978 tax account. Furthermore, on March 15, 1982, the due date for plaintiff's 1981 taxes, no deficiency existed in plaintiff's 1981 tax account. P's Reply to D's Statement of Uncontr. Facts ("P's Rep."), at ¶ 7. That simple state of affairs changed precipitously with subsequent events.

Based on its filings relating to the 1984 tax year, AT & T became eligible to claim a carryback to its 1981 tax year. P's Rep. at ¶ 4. Due to the 1984 carryback, plaintiff claimed a tentative refund with respect to 1981 in the amount of $284,014,301.00. Said refund issued to plaintiff via three separate checks, each dated March 25, 1985 (the 1981 refund). *Id.*

Some nine (9) years after receiving the March 25, 1985 refund checks drawn by Internal Revenue Service (IRS) from plaintiff's 1981 tax account, a portion of said refund was determined erroneous, and was recaptured; in other words, the 1984 carryback was reduced. P's Rep. at ¶ 5. Ergo, on September 14, 1994, the IRS assessed plaintiff tax totaling $29,256,290.77 with respect to plaintiff's 1981 tax year. *Id.* Combined with three other adjustments and interest there-

on,[1] AT & T's 1981 tax year had a deficiency of $21,474,881.84 (the 1984 deficiency). *Id.* at ¶ 6.

The 1981 tax year was not the only tax year impacted by the carryback from the 1984 tax year. Rather, another 1984 carryback resulted in abatement of tax respecting plaintiff's 1978 tax year. P's Rep. at ¶ 9. Thus, on or about May 19, 1995, an abatement of tax posted to plaintiff's 1978 tax year in the amount of $140,819,936.00 (the 1978 overpayment). *Id.* at ¶ 10. The effective date of this 1978 abatement was March 15, 1985 (which coincides with the due date for the tax year that created the carryback (1984), and thus gave rise to the abatement). *Id.*

On or about June 16, 1995 (approximately one month after the 1978 overpayment posted to plaintiff's 1978 tax year), the IRS credited $21,474,881.84 of the 1978 overpayment to fully offset plaintiff's 1981 tax year deficiency. P's Rep. at ¶ 12. Plaintiff received no interest on this portion of the 1978 overpayment.[2] *Id.* at ¶ 13.

The instant dispute requires us to determine, in accordance with the facts recited above, whether plaintiff AT & T is entitled to overpayment interest on the $21,474,881.84 of the 1978 overpayment credited to plaintiff's 1981 tax year to offset the 1981 tax deficiency.

## III. DISCUSSION ·

### A. Summary Judgment

Pursuant to RCFC 56(c), summary judgment is appropriate when there are no genuine issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. *See,* RCFC 56(c). Here, both parties seek summary judgment in their favor. Consequently, the parties mutually contend that there are no genuine issues of material fact in dispute. Additionally, in accordance with RCFC 56(b)(1), the parties

stipulated to the operative facts recited, *supra.*

Noted briefly, *supra,* the dispositive issue before this court is how much overpayment interest, if any, is due to plaintiff arising from the $21,474,881.84 of its 1978 overpayment credited to its 1981 tax year to offset a deficiency. The parties agree, as does the court, that the effective date of the 1978 overpayment (March 15, 1985, the due date of the 1984 return) is the relevant date upon which any overpayment interest *begins* to accrue. Hence, the resolution of this matter turns on the date used as the end point for the calculation of any overpayment interest (the "to-date"). In this regard, there is no dispute that 26 U.S.C. § 6611 (§ 6611) controls the issue of when any overpayment interest *ceases* accrual when said overpayment is credited in satisfaction of a taxpayer's deficient tax from a different tax year. Instead, the parties differ on the correct application of § 6611 to the particular set of facts at hand. This is a pure question of law. Therefore, upon careful review of the stipulated facts set forth in the previous section, this court concurs with the parties that there are no material facts in dispute, and similarly agrees that this matter is appropriate for disposition via summary judgment.

### B. Calculation of the To–Date (*i.e.,* ending date) for Interest on Overpayments

As stated, this case centers on the correct application of § 6611, which states in pertinent part:

Interest on overpayments.

(b) Period. Such interest shall be allowed and paid as follows:

   (1) Credits. In the case of a credit, from the date of the overpayment to the due

---

1. These three adjustments are: (i) an abatement dated November 10, 1986, (ii) an assessment dated September 2, 1991, and (iii) an abatement dated April 10, 1995.

2. The parties do not dispute that overpayment interest on the balance of the 1978 overpayment,

in an amount apparently agreeable to both, posted to plaintiff's 1978 tax year. The only dispute before this court is the entitlement of plaintiff to interest on the portion of the 1978 overpayment credited to plaintiff's 1981 deficiency.

date of the amount against which the credit is taken.

26 U.S.C. § 6611.

Plaintiff argues that "the due date of the amount against which the credit is taken," 26 U.S.C. § 6611(b)(1), must be interpreted here as the date on which the erroneous tentative refund for the 1981 tax year issued to plaintiff (March 25, 1985). Accordingly, plaintiff avers that it is entitled to interest on the relevant portion of the 1978 overpayment for the period from March 15, 1985 to March 25, 1985, plus interest accrued on the overpayment interest.

Supporting its assertion of entitlement to said overpayment interest, plaintiff argues that, on its face, § 6611 is ambiguous, and must be read in the context of supplemental resources. Furthermore, plaintiff avers that Treasury Regulation § 301.6611–1(h)(2)(i), which states that "[i]f an overpayment of tax is credited, interest shall be allowed from the date of the overpayment to the due date...of the amount against which such overpayment is credited," is a general, non-exclusive guideline that is inapplicable to these facts. Likewise, plaintiff attempts to distinguish the instant case from *Marsh & McLennan Cos., Inc. v. United States*, 302 F.3d 1369 (Fed.Cir. 2002),[3] a 2002 decision also concerning the apposite to-date for overpayment interest.[4] Instead, plaintiff urges the court to apply the rationale explained in IRS Technical Advice Memorandum 9443007, 1994 WL 589253 ("TAM 9443007"), wherein the IRS addressed facts similar to our case, and held in accordance with plaintiff's position here.

Contrastingly, defendant argues the Federal Circuit's decision in *Marsh & McLennan* controls this case, and mandates that this court find that the "to-date" here is

March 15, 1982. By reference to *Marsh & McLennan*, defendant alleges that any ambiguities inherent to § 6611 were, under analogous facts, definitively resolved by the Federal Circuit by applying Treasury Regulation § 301.6611–1(h)(2)(i). Likewise, defendant contends that TAM 9443007 is unavailing, because (i) TAMs have no precedential value, per 26 U.S.C. § 6110(k)(3), and (ii) TAM 9443007 is directly contradicted by two later rulings.[5]

A careful analysis of *Marsh & McLennan* necessarily entails discussion of the parties' aforementioned arguments. Moreover, should we concur with defendant that *Marsh & McLennan* squarely resolves the issue before us, no amount of urging by plaintiff to the contrary may alter our result. Further, even if *Marsh & McLennan* cannot fully dispose of the present issue, we cannot disregard the Federal Circuit's decision to the extent that it may inform our analysis of the instant matter. Thus, *Marsh & McLennan* is the logical place to start our discussion.

1. Applicability of *Marsh & McLennan*

Assessing the applicability of *Marsh & McLennan* to the instant case requires us to first recite the operative facts thereof. Plaintiff Marsh overpaid its 1985 taxes by $275,139 (1985 overpayment) and its 1986 taxes by $3,412,083 (1986 overpayment). In addition, plaintiff overpaid its 1987 taxes by $12,694,216.[6] Plaintiff opted to apply its 1987 overpayment to its 1988 tax liability ("1987 credit elect overpayment").[7] The 1987 credit elect overpayment was thus transferred to plaintiff's 1988 tax year on March 15, 1989 (the due date for plaintiff's 1988 taxes).

---

**3.** *Marsh & McLennan's* applicability to this case shall be explored fully, *infra*, along with each of the parties' specific contentions of law.

**4.** Plaintiff concedes that *Marsh & McLennan* presents similar facts to the instant case, but argues that the case at bar's facts differ from *Marsh & McLennan* enough that we are not bound by that decision.

**5.** Defendant cites Field Service Advice 1999–25005, and TAM 9646001 in this connection.

**6.** *Marsh & McLennan* also involved the application of a portion of the 1986 overpayment against a deficiency for 1988. For the sake of expedience, we limit our discussion to the credit of the 1985 and a portion of the 1986 overpayments against the 1987 deficiency, as the fact pattern and analysis are identical to that of the credit of the 1986 overpayment to the 1988 deficiency.

**7.** While it is unnecessary to our discussion, we note for clarity that credit elect overpayments are not accorded interest. *Marsh & McLennan*, 302 F.3d at 1372.

In 1994, the IRS determined that plaintiff underpaid its 1987 taxes by $978,135. To offset this subsequently-determined deficiency, the IRS applied the 1985 overpayment and a portion of the 1986 overpayment to offset the 1987 underpayment. Since the 1987 deficiency amount was less than the 1987 credit elect overpayment, the effective date of the credit of its 1978 overpayment to its 1987 tax year was March 15, 1989 (the date that the credit elect overpayment transferred to plaintiff's 1988 tax year). Stated differently, because the 1987 credit elect overpayment exceeded the 1987 underpayment ($978,135 versus $12,694,216), the underpayment merely reduced the credit elect overpayment eligible for transfer to the 1988 tax year.

Relative to the 1985 and the portion of the 1986 overpayments applied to offset the 1987 underpayment, the government accorded plaintiff overpayment interest from the date of the overpayment to March 15, 1988,[8] the date upon which plaintiff's 1987 taxes became due.

Marsh argued that, since the effective date of the transfer of the 1985 overpayment was, in fact, March 15, 1989, it was entitled to overpayment interest based on that to-date. Conversely, the defendant argued that—irrespective of the effective date of the transfer of the 1985 overpayment—the applicable to-date was March 15, 1988. This was so, defendant argued, because that was the due date for the taxes in the tax year to which the overpayment was credited.

The Federal Circuit noted that both "parties apparently agree[d] that, absent the credit elect overpayments, the ... due date[ ] involved...[was] March 15, 1988,...(i.e., the due date[ ] for the 1987 ...tax return[ ] ...) and that interest on the 1985 ...overpayment[ ] would have ceased on th[at][ ] date[ ]." *Marsh & McLennan*, 302 F.3d at 1373. So finding, the court focused its analysis on whether credit elect overpayments must be taken into account when calculating interest due on other over-

payments. *Id.* In simple terms, Marsh argued that there was no outstanding liability in its 1987 tax account until the 1987 credit elect overpayment was transferred to its 1988 tax year on March 15, 1989, creating the 1987 underpayment. That, accordingly, was the date that payment was "due" for the purpose of calculating overpayment interest. Thus, following Marsh's logic, it was entitled to interest until "its 1987 tax account actually became negative on March 15, 1989." *Id.* at 1375.

The government disagreed. Citing § 6611 and corresponding Treasury Regulation § 301.6611–1(h)(2), *supra*, the government urged that the "due date" referred to therein was "the due date of the return[ ], and that this date [did][ ] not change as a result of the 1987 ...credit elect overpayment[ ]." *Marsh & McLennan*, 302 F.3d at 1375.

Faced with the foregoing, the Federal Circuit concurred with the government's position. The court began its analysis by noting that § 6611(b)(1) is ambiguous, stating that the " 'due date' could refer either to the due date of the return...or the date on which there was a net deficit in the amount due in the taxpayer's account for the particular [tax] year." *Id.* So finding, the court looked to the Treasury regulations to resolve the ambiguity. *Id.* (citing *United States v. Mead Corp.*, 533 U.S. 218, 227–28, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001); *United States v. Haggar Apparel Co.*, 526 U.S. 380, 392, 119 S.Ct. 1392, 143 L.Ed.2d 480 (1999)).

Turning to Treasury Regulation § 301.6611–1(h)(2), *supra*, the *Marsh & McLennan* court concluded:

The Treasury regulations are, we think, quite clear. They provide: "General rule. If an overpayment of tax is credited, the interest shall be allowed from the date of the overpayment to the due date...of the amount against which such overpayment is credited," 26 C.F.R. § 301.6611–1(h)(1) (2001), and define "due date" as: "In general. The term 'due date,' as used in this section, means the last day fixed by law or

---

8. In actuality, the government—apparently mistakenly—paid overpayment interest from the date of the overpayment until April 15, 1988. The government conceded it was barred from

recovering this extra month of interest because the statute of limitations had passed. *Marsh & McLennan*, 302 F.3d at 1372.

regulations for the payment of the tax (determined without regard to any extension of time)," id. § 301.6611–1(h)(2)(i).

*Marsh & McLennan,* 302 F.3d at 1375.

Marsh argued that, within the cited Treasury regulation's definition of "due date," the use of the words "in general" connote that the definition itself does not "purport to interpret the entire phrase 'due date of the amount against which the credit is taken' in section 6611(b)(1)." *Id.* The court, observing that said Treasury regulation is keyed to § 6611, found this argument unpersuasive. *Id.* at 1376. Thus, *Marsh & McLennan* held that overpayment interest ceased accrual on March 15, 1988, because that was the due date for Marsh's 1987 taxes, and the overpayment was credited to Marsh's 1987 tax account. *Id.*

As noted above, the government argues that *Marsh & McLennan* controls the instant case, remarking:

> Both plaintiff and Marsh & McLennan had corporate income tax overpayments credited against deficiencies in corporate income tax for other years. Neither plaintiff nor Marsh & McLennan had unpaid deficiencies as of the time their taxes for the deficiency years were first due, on the due dates of the returns for those years. Both plaintiff and Marsh & McLennan had deficiencies arise after their returns (and taxes) for the deficiency years had originally been due. Those deficiencies for both plaintiff and Marsh & McLennan became unpaid as a consequence of overpayments, later determined to have been erroneous, which, in the case of Marsh & McLennan, were credited against taxes for the next year and, in the case of plaintiff at bar, paid as refunds.

D's Opp. & X–Mot. for SJ, at 5–6.

Defendant's recitation of the similarities between *Marsh & McLennan* and the instant matter is totally accurate. Regardless, plaintiff urges this court to limit our reading of *Marsh & McLennan* to situations respecting credit elect overpayments. In this connection, plaintiff argues that the issue of overpayment interest in the context of a later-arising liability due to an excessive refund is a matter that has not "been specifically addressed by either Congress, the Treasury Department or any federal court." P's Reply Br. at 6.

We do not completely agree with either party on the issue of the applicability of *Marsh & McLennan.* This is so because we cannot ignore the language therein that pointedly frames the issue there in terms of credit elect overpayments.[9] Nonetheless, we cannot disregard the factual similarities between the two cases, nor the rationale applied by the Federal Circuit when analyzing the precise statute and regulations presently before this court. *Marsh & McLennan's* analysis is patently illuminating and relevant here. Thus, while we do not read its holding as binding under the instant record, we are persuaded that the similarities between the two cases require us to harmonize our result with the rationale presented in *Marsh & McLennan.*

The Federal Circuit expressly rejected the argument that Treasury Regulation § 301.6611–1(h)(2)(i) does not purport to fully interpret § 6611(b)(1). We read that language to require interpretation of § 6611(b)(1)'s reference to "due date" as "the last day fixed by law or regulations for the payment of the tax (determined without regard to any extension of time)," 26 C.F.R. § 301.6611–1(h)(2)(i), unless we are faced with one of the many delineated exceptions noted elsewhere in the text of said regulation.

We note that we would reach the same result without the guidance of *Marsh & McLennan.* This is so because a plain reading of Treasury Regulation § 301.6611–1 reveals that its drafters conceived of, and expressly set forth, six (6) situations that dictate an alternate definition of "due date"[10] for the purpose of § 6611(b)(1).

**9.** *E.g.,* "[t]he parties' disagreement arises from the existence of the 1987 and 1988 credit elect overpayment." *Marsh & McLennan,* 302 F.3d at 1373.

**10.** 26 C.F.R. §§ 301.6611–1(h)(2)(ii)—(vii) set forth alternate guidelines for computing allowable interest on overpayments in circumstances, such as when an overpayment is credited against—tax payable in installments, tax not yet

Thus, our reading of Treasury Regulation § 301.6611–1, in combination with a loose application of the principle *expressio unius est exclusio alterius*, informs us that the "general rule" governs to-date determinations for overpayment interest when an overpayment is credited to the taxpayer instead of refunded, unless such determination falls into one of the numerous express exceptions listed in Treasury Regulation §§ 301.6611–1(h)(2)(ii)—(vii).

Applied to the situation at bar, Treasury Regulation § 301.6611–1(h)(2)(i) leads us to hold that March 15, 1982 is the appropriate to-date for the purpose of calculating overpayment interest due to AT & T. We so hold even though the erroneous tentative refund that caused the later-determined underpayment did not issue until March 25, 1985. The fact remains that the 1978 overpayment credited to plaintiff's 1981 tax year, and the due date for plaintiff's 1981 tax return was March 15, 1982. Ergo, overpayment interest did not begin to accrue on plaintiff's 1978 overpayment until March 15, 1985 and ceased to accrue three years *earlier*. As a consequence, we are constrained to hold that plaintiff AT & T is not entitled to interest on the portion of its 1978 overpayment that was credited to its 1981 tax year. We find that this result is mandated by the applicable statute and Treasury regulation, and accords the proper deference to precedent in this Circuit.

### 2. Other Resources

Although we find that *Marsh & McLennan* and the relevant laws dictate a result for the defendant, this court carefully considered plaintiff's argument that "TAM 9443007 is applicable to the present set of facts. [Thus] [i]n the absence of controlling authority to the contrary, the Court should reach the same conclusion." P's Reply Br. at 6.

Regarding the foregoing, we note that the Federal Circuit discussed the unavailability of an internal IRS determination precisely addressing the issue presented in *Marsh &*

*McLennan. Marsh & McLennan*, 302 F.3d at 1376 ("while an IRS interpretation of its regulation might be entitled to deference where there is an ambiguity, Marsh cites no interpretation of the regulations by the IRS in a context similar to this one that would contradict their plain meaning." *Id.* (internal citations omitted)). Thus, the court dismissed TAM 9443007 without discussion, although Marsh cited said ruling. *Id.*

We cannot dismiss TAM 9443007 so easily here, as it presents a near-identical factual situation to the case at bar. And, as the Federal Circuit noted, TAMs may be entitled to deference when a court is faced with an ambiguity. In TAM 9443007, the IRS held that "in the case of an excessive refund, the date of the refund is the 'due date' when the taxpayer's liability to the Government begins." TAM 9443007, available at 1994 WL 589253, 1994 PRL LEXIS 1285, at *10. Accordingly, TAM 9443007 held that the taxpayer is entitled to interest to the date of the refund, and not the due date for the tax return of the credit year.

Relative to this ruling, defendant asserts the following: (i) pursuant to 26 U.S.C. § 6110(k)(3), TAMs (along with all written IRS rulings) may not be used or cited as precedent, and (ii) subsequent IRS rulings directly contradict the holding in TAM 9443007.[11]

Defendant is correct that TAMs are not precedential. We note though that, while not binding, they can be instructive. TAM 9443007, however, is of little aid to plaintiff's position. We so find because, in addition to our foregoing analysis, defendant is correct that the 1994 TAM cited by plaintiff was later directly contradicted. For instance, faced with the same issue in 1999, the IRS held in a Field Service Advice Memorandum that "[o]verpayment interest runs only to the due date of the income tax return for the year in which the overpayment is applied, not the actual date the underpayment arose." IRS FSA 199925005, available at 1999 WL

---

due, interest, and an additional amount, addition to the tax, or assessable penalty. *Id.*

11. Additionally, defendant argues that § 6611, the Treasury regulations, and *Marsh & McLen-*

*nan* compel an opposite result from that set forth in TAM 9443007. As we addressed these issues, *supra*, we need not duplicate our effort here.

424832, 1999 FSA LEXIS 92, at \*7–8. Thus, we hold that (while still not binding on this court) the later-issued ruling carries greater persuasive weight. Furthermore, as exhaustively explained, *supra*, our reading of Federal Circuit precedent and our independent reading of § 6611 and Treasury Regulation § 301.6611–1 constrain us to hold that the applicable to-date, under these facts, is March 15, 1982. Thus, we agree with defendant that no interest is due plaintiff since the *end-date* (March 15, 1982) regarding the commencement of interest precedes the *beginning-date* (March 15, 1985).

## IV. CONCLUSION

Based on all of the foregoing, we hereby GRANT defendant's cross-motion for summary judgment pursuant to RCFC 56(c), and accordingly DENY plaintiff's motion for summary judgment. The Clerk of the Court shall enter judgment dismissing plaintiff's complaint.

IT IS SO ORDERED.