**GENERAL INSTRUMENT CORPORATION,**
Plaintiff,

v.

**UNITED STATES of America, Defendant.**

**No. 92–211 T.**

United States Court of Federal Claims.

Feb. 16, 1995.

■■■■

---

Robert F. Hermann, Westfield, NJ, for plaintiff.

Jay G. Philpott, Jr., with whom were Acting Assistant Atty. Gen. Michael L. Paup and Mildred L. Seidman, Washington, DC, for defendant.

## OPINION AND ORDER

TURNER, Judge.

This opinion addresses defendant's motion filed July 27, 1992 to dismiss this civil action on the grounds that the applicable statute of limitations had expired prior to the filing of the complaint. We conclude that the motion should be treated as one for summary judg-

ment pursuant to RCFC 56 and that, so considered, the motion should be granted.

### I

Plaintiff is an electronics manufacturer. This claim arose from plaintiff's overpayment of federal income taxes. It is undisputed that plaintiff paid $411,512.28 in income taxes for the fiscal year ending February 28, 1976. The IRS found this sum deficient by $227,-745. On July 14, 1980, plaintiff paid the outstanding balance on the new assessment in addition to $64,622 in deficiency interest. Thereafter, the IRS re-evaluated plaintiff's liability, applying unused foreign tax credits to offset the 1976 deficiency. The parties are agreed that plaintiff was overassessed in the principal amount of $559,765 plus $64,622 in deficiency interest.[1]

On February 26, 1986, an IRS certifying officer signed Form 1166, Voucher and Schedule of Payment, authorizing a manual refund check to plaintiff for $812,254. The reimbursement included a $510,274 refund of tax and $310,980 of statutory interest.[2] The IRS conceded that $301,980 was less than the amount of allowable statutory interest owed to plaintiff with respect to the aggregate of overpaid tax plus deficiency interest. Pl. Resp. to Def. Reply, App. C at 5.

The scheduling of an overassessment on the records of the IRS and the authorization of a refund usually occur simultaneously; however, in this case, an IRS officer did not sign Form 2188, Voucher and Schedule of Overpayments and Overassessments, until March 17, 1986.[3] The IRS transcript of account reflects the associated entries on that date, each identified by a particular transaction code. Pl. Opp'n, App. A, Ex. 1. Code "301" appears beside the $559,765 figure denoting the abatement and scheduling of a tax overassessment. Tr. (9/29/94) at 10. The

---

1. This agreement was documented in Form 870 or Form 870–AD dated November 11, 1985. Def. Reply to Pl. Opp'n, App., ¶ 7.

2. The manual refund check reimbursed plaintiff for less than the principal amount agreed upon by the parties, i.e., $510,274 rather than $559,-765. The remaining $49,491 was transferred and applied as a credit to a separate General Instrument account. Pl. Opp'n, App. A, Ex. 1.

3. The IRS likely issued a manual refund to stop further interest from accruing on the overpayment. Pl. Opp'n App. A, ¶ 12. The posting of manual refunds to a computerized schedule of items affecting tax status is often delayed, because a manual transaction occurs outside the normal sequence of computer-driven events. *Id.* ¶ 25.

entry of a $64,821.77 credit is referenced by code "337", signifying the overassessment of a deficiency interest payment. Tr. (9/29/94) at 11.

Defendant issued a second Form 1166 on March 31, 1986, authorizing another refund check for $64,622. Plaintiff received no further reimbursement and eventually filed a complaint on March 27, 1992, alleging failure of the IRS to pay the full amount of statutory interest owed on the overpayment.

## II

### A

Although defendant filed a motion to dismiss pursuant to RCFC 12(b), we think the sounder approach is to consider the motion as one for summary judgment under RCFC 56. RCFC 12(b)(4) provides: "If ... matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56...." Plaintiff's agreement that no material facts are in dispute further supports our conclusion that conversion is appropriate. Tr. (9/29/94) at 19–20, 42–43.

■ The parties agree that this action for statutory interest is governed by a six-year statute of limitations. *See* 28 U.S.C. §§ 2401, 2501 (1993). Unlike suits for refunds of tax principal or deficiency interest, which must be brought within three years of filing a return or two years of payment of the tax, plaintiff here seeks statutory interest on an overpayment. 26 U.S.C. § 6511(a). Such a claim is controlled by the general six-year statute of limitations for matters brought before the Court of Federal Claims. *Barnes v. United States*, 133 Ct.Cl. 546, 548, 137 F.Supp. 716, *cert. denied*, 351 U.S. 933, 76 S.Ct. 789, 100 L.Ed. 1462 (1956); 28 U.S.C. § 2501. The pivotal issue thus concerns when the limitations period began to run.

Defendant argues that the cause of action for statutory interest accrued on the date the overassessment was scheduled, March 17, 1986. Under this theory, the six-year statute of limitations would have expired on March 17, 1992, before plaintiff filed suit on March 27, 1992. In support, defendant explains

that the refunding of an overpayment is a two-step process. First, an overpayment is identified. When this amount of the overpayment is quantified, the overassessment is "scheduled." This event allegedly occurred when Form 2188, Voucher and Schedule of Overpayments and overassessments, was signed on March 17, 1986. An additional step is required before the taxpayer actually receives reimbursement; indeed, the full amount of the overpayment may never be returned by check. For instance, some or all of the overpayment may offset outstanding liabilities from other accounts. If a taxpayer is in fact owed a reimbursement, however, Form 1166 is employed to authorize the release of funds from the Treasury.

The relevant event in this process, defendant argues, occurs when the overassessment is scheduled. In support of its position, defendant cites the Internal Revenue Code:

> The date on which the Secretary first authorizes the scheduling of an overassessment in respect of an internal revenue tax shall be considered as the *date of allowance* of refund or credit in respect of such tax.

I.R.C. § 6407 (1993) (emphasis added). Defendant also relies upon a federal regulation which states: "The date on which ... an authorized certifying officer ... first certifies the allowance of an overassessment in respect of any internal revenue tax shall be considered as the *date of allowance* of refund or credit in respect of such tax." 26 C.F.R. § 301.6407–1 (1993) (emphasis added).

It follows, defendant asserts, that the date of allowance of a refund or credit gives rise to the cause of action for statutory interest. *See Barnes v. United States*, 133 Ct.Cl. 546, 137 F.Supp. 716, *cert. denied*, 351 U.S. 933, 76 S.Ct. 789, 100 L.Ed. 1462 (1956); *Colgate–Polmolive–Peet Co. v. United States*, 74 Ct. Cl. 562, 58 F.2d 499 (1932). *Barnes* involved facts nearly identical to the case at bar. The plaintiff there contended that the limitations period for statutory interest began to run thirty days after the submission of the proposed refund to the Joint Committee whose approval was required by law. *Barnes*, 133 Ct.Cl. at 548, 137 F.Supp. 716. The *Barnes* court disagreed and held that the statute of

limitations began to run at an earlier date. The court observed:

> It was early pointed out that a cause of action for interest does not accrue until the refund or credit is allowed [citing *Palmolive–Peet*].... When the Commissioner signed the schedule of overassessments ..., plaintiff's credit was allowed and its cause of action for interest due on this credit matured and accrued at that time.[4]

## B

Plaintiff argues that the statute of limitations began to run on March 31, 1986 when the IRS generated a second check for the $64,622 deficiency interest overpayment. Relying on common law principles, plaintiff notes that a cause of action accrues "when all the events which fix the government's alleged liability have occurred and the plaintiff was or should have been aware of their existence." *Hopland Bank of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed.Cir. 1988) (emphasis in original). Plaintiff contends that the government's liability for statutory interest was uncertain until the date of the second refund check. Prior to that, the manual refund was issued merely as an intermediate step to avoid further interest on the outstanding balance. For support, plaintiff cites the IRS *ADP and TDRS Information Manual* which defines the transaction. code for a manual refund as a "Refund issue[d] prior to final settlement." Pl. Resp. to Def. Reply, App. C. Because the refund was a multi-stage transaction, plaintiff argues, the liability for statutory interest was not finally

determined until the last step was completed, i.e., until the $64,622 payment of deficiency interest was made on March 31, 1986.

Plaintiff cites I.R.C. § 6611 and the accompanying regulations to support its position that "there can be no overpayment of tax until the entire tax liability has been satisfied." I.R.C. § 6611 (1993); 26 C.F.R. § 301.6611–1(b) (1993). Plaintiff suggests that the liability was not satisfied until March 310, 1986, when the IRS completed the integrated series of reimbursement transactions.[5] Plaintiff also relies upon *United States v. Wurts*, 303 U.S. 414, 58 S.Ct. 637, 82 L.Ed. 932 (1938) and its progeny for the proposition that the statute of limitations for an erroneous refund begins to run upon actual payment to the taxpayer, rather than when the refund is allowed. *Wurts*, 303 U.S. at 414, 58 S.Ct. at 637. The *Wurts* Court reasoned:

> The Commissioner's signature on a schedule of over-assessments does not finally establish a claimant's right to a refund and does not preclude further investigation and consideration of the claim. The Commissioner could later take his signature from the schedule and as pointed out by this Court might—even after a check was signed and mailed—cancel the payment and revoke the authority of payment erroneously made.

*Id.* at 417–18, 58 S.Ct. at 639. Claiming, that *Barnes* was wrongly decided in light of the Supreme Court's decision in *Wurts*, plaintiff insists that the cause of action for the deficient reimbursement did not accrue until the

---

4. The *Barnes* court was greatly influenced by a section of the Internal Revenue Code of 1939 which provided:
   Where the Commissioner has signed a schedule of overassessments in respect of any internal revenue tax imposed by this title, the Revenue Act of 1932, or any prior revenue Act, the date on which he first signed such schedule (if after May 28, 1928) shall be considered as the date of allowance of refund or credit in respect of such tax.
   I.R.C. § 3770(a)(3) (1939). The substance of this provision is now codified as 26 U.S.C. § 6407 (1993).

5. I.R.C. § 6611 provides:
   In the case of a refund, [interest is due] from the date of the overpayment to a date (to be determined by the Secretary) preceding the

date of the refund check by not more than 30 days, whether or not such refund check is accepted by the taxpayer after tender of such check to the taxpayer....
   The federal regulation elaborates:
   Except as provided in section 6401(a), relating to assessment and collection after the expiration of the applicable period of limitation, there can be no overpayment of tax until the entire tax liability has been satisfied. Therefore, the dates of overpayment of any tax are the date of payment of the first amount which (when added to previous payments) is in excess of the tax liability ... and the dates of payment of all amounts subsequently paid with respect to such tax liability.
   26 C.F.R. § 301.6611–1(b).

government ceased further payments on the refund and the amount of the deficiency in statutory interest became fixed, i.e., on March 31, 1986.

In the alternative, plaintiff argues that the claim is timely even if the provisions cited by defendant control. If one presumes that the statute begins to run when the refund is allowed, then the signing of the second Form 1166 is the appropriate measuring event, plaintiff contends. It was thus not until March 31, 1986 when the government authorized the issuance of the last reimbursement check that the refund was allowed. The six-year period of limitations therefore had not expired.

### C

■ Although plaintiff correctly states the common law doctrine governing the accrual of a cause of action and convincingly argues that the *refunding* process did not conclude before March 31, 1986, these propositions are ultimately irrelevant. I.R.C. § 6407 expressly mandates that a refund is allowed upon the scheduling of an overassessment. The binding precedent of the Court of Claims holds that a claim for statutory interest accrues when a refund is allowed. *Barnes,* 133 Ct.Cl. at 549, 137 F.Supp. 716. We thus find that the six-year statute of limitations implicated here began to run on the date that the overassessment was scheduled and that the plaintiff's claim is time-barred.

■ We further find that the overassessment was scheduled on March 17, 1986 when Form 2188 was signed by a certifying official. Upon the execution of Form 2188, Voucher and Schedule of Overpayments and Overassessments, credits of $559,765 and $64,621.77 were immediately posted to plaintiff's account, thereby quantifying the overassessment. Defendant's affidavits attest to the significance of this transaction, claiming,

"Like the tax abatement, the computer generated abatement of interest would have been included on a Form 2188, Voucher and Schedule of Overpayments and Overassessments, for authorization and allowance on the schedule date, March 17, 1986." Def. Reply to Pl. Opp'n, App., ¶ 33. Despite plaintiff's contentions to the contrary, it is irrelevant that the actual reimbursement checks were not approved or issued until a later date.[6]

The statutes and cases which plaintiff cites are inapposite. I.R.C. § 6611 concerns the *calculation* of interest on overpayments. *See* 26 C.F.R. § 301.6611–1(c) (1993). In essence, it clarifies that no interest will accrue on money that has not been remitted to the government.[7] Similarly, the cases which plaintiff cites concern the accrual date governing suits for refunds under I.R.C. § 6511. Even though their rationale may seem applicable here, the Court of Claims has held that suits for the refunding of tax principal or deficiency interest are treated differently from claims for statutory interest. *Alexander Proudfoot Co. v. United States,* 197 Ct. Cl. 219, 454 F.2d 1379, 1384 (1972). This distinction is reflected by the differing lengths of the respective statutes of limitation, i.e., two years versus six years. *Id.*

Plaintiff's attempts to distinguish its case from *Barnes* are unavailing. First, plaintiff unpersuasively argues that this claim involves a refund rather than a credit. The transaction in *Barnes* required both a refund and a credit, however. *Barnes,* 133 Ct.Cl. at 549, 137 F.Supp. 716. Furthermore, the language of I.R.C. § 6407 and *Barnes* suggests that this is an irrelevant distinction.[8]

Plaintiff also argues that *Barnes* should be abandoned as contradictory to the Supreme Court jurisprudence as set forth in *Wurts* and subsequently enunciated in Revenue Rulings and General Counsel Memos. *See, e.g.,* Rev.Rul. 57–242, 1957–1 C.B. 452. We

6. The dates of both Forms 1166 which authorized *payment* of the refund are thus insignificant.

7. I.R.C. § 6611 is found in the subchapter labelled "Interest on Overpayments." In contrast, I.R.C. § 6407 appears among the more relevant provisions dealing with "Abatements, Credits, and Refunds."

8. I.R.C. § 6407 refers to the date of allowance of a "refund or credit in respect of such tax." The *Barnes* court referred to "the accrual of [plaintiff's] cause of action for interest on an allowed refund or credit." *Barnes,* 133 Ct.Cl. at 549, 137 F.Supp. 716.

disagree. As mentioned earlier, *Wurts* and *Barnes* involved different tax transactions, an erroneous refund and the allowance of statutory interest, respectively. Indeed, the *Wurts* Court drew particular attention to this distinction:

> Respondent contends that the Revenue Act of 1932 [which virtually mirrors § 6407] indicated Congressional intent to designate the date of allowance of a refund (the date the Commissioner signs the schedule of over-assessments) as the date of refund for computing the period of limitations under § 610.... This Act in no manner relates to limitations on suits for erroneous refunds. It has no purpose in common with § 610 of the 1928 Act. The 1932 Act throws no light on the meaning of § 610.

303 U.S. at 416–17, 58 S.Ct. at 638.

Finally, plaintiff concedes that if *Barnes* is still good law, then its claim must fail. Tr. (9/29/94) at 45–46. However, counsel suggests that this court need not follow Court of Claims precedent, because it leads to inequitable results. Indeed, *Barnes* seems to defy common law jurisprudence by allowing a cause of action to accrue before the claimant could possibly have notice that the limitations period had commenced; since the scheduling of an overassessment is an internal IRS procedure, the taxpayer will usually not receive notification of allowance on the date thereof. Nevertheless, the Court of Claims considered this possibility and held:

> The fact that plaintiff was not notified of the Commissioner's action until after July 21, 1949, does not prevent the accrual of its cause of action for interest on an allowed refund or credit. The plaintiff had five years and nine months within which to sue after it received the certificate of overassessment showing the details of the credit and refund and the interest with respect thereto.

133 Ct.Cl. at 549, 137 F.Supp. 716; *accord Colgate–Palmolive,* 58 F.2d at 503. We see even less potential for injustice here, for this plaintiff had notice of the overassessment as early as November 1985 when it signed a settlement agreement with defendant. *See supra* note 1. In any event, we are bound to find that the cause of action accrued when the schedule of overassessments was signed on March 17, 1986.

### III

Based on the foregoing, the defendant's motion to dismiss filed on July 27, 1992, now addressed as a motion for summary judgment, is GRANTED. Accordingly, judgment shall be entered in favor of defendant.

Pursuant to RCFC 54(d), costs shall be allowed to the defendant ("the prevailing party").

### ORDER ON MOTION FOR PUBLICATION OF OPINION

This order addresses defendant's motion filed March 21, 1995 for publication of the opinion and order in this case issued on February 16, 1995. *See* RCFC 52.1(b).

For the reasons set forth in defendant's motion, the motion is GRANTED. Accordingly, the Clerk is requested to take the necessary action to accomplish publication of said opinion and order dated February 16, 1995.