The COCA–COLA COMPANY and Subsidiaries, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 03–1155 T.

United States Court of Federal Claims.

June 3, 2009.

Joseph M. Persinger, Milbank, Tweed, Hadley & McCloy LLP, New York City, for plaintiff.

William C. Rapp, Tax Division, Court of Federal Claims Section, United States Department of Justice, for defendant.

## OPINION and ORDER

BLOCK, Judge.

### I. INTRODUCTION

This case forces the court to wade, once again, into the ever-growing thicket that is the Internal Revenue Code (title 26 of the United States Code, hereinafter the "I.R.C."). The question presented is a narrow, but prickly one—namely, whether plaintiff, the Coca–Cola Company, is entitled to interest on the overpayment of its taxes between March 15, 1985, and September 27, 1985. In support of its claim, plaintiff presents a stipulated decision of the United States Tax Court,[1] which determined that plaintiff was entitled to nearly all of a net operating loss ("NOL")[2] carryback that it originally asserted in its 1985 tentative refund request. Joint Stipulation of Facts ("JSF") ¶ 13. The Internal Revenue Service ("IRS") had issued the tentative refund within twelve days of plaintiff's request, but then, in 1991, it determined that the majority of plaintiff's asserted carryback was in error and, accordingly, assessed additional tax plus deficiency interest. JSF ¶¶ 8, 11.

As a result of the Tax Court's stipulated decision, the IRS has since abated plaintiff's taxes, resulting in a $12,352,648 overpayment in plaintiff's tax account between March 15, 1985, and September 27, 1985. JSF ¶¶ 14, 16. Plaintiff claims interest on this overpayment, citing I.R.C. § 6611(a), which provides that "[i]nterest shall be . . . paid upon any overpayment in respect of any internal revenue tax." Pl.'s Mot. Summ. J. at 7. Defendant disagrees and cites § 6611(e), which bars interest if the IRS refunds an overpay-

ment within 45 days of the date on which the taxpayer filed its return. Def.'s Br. at 9. Defendant argues that because the IRS originally returned the requested amount within 45 days, no interest is now due. Def.'s Br. at 9–10. Defendant maintains this position, despite the IRS's subsequent errant recapturing of the majority of plaintiff's tentative refund. *Id.*

The material facts in this case are not in dispute; the case turns on statutory interpretation alone. This court must examine the interaction between § 6411, which governs tentative refunds, and § 6611, which governs interest on overpayments. Both parties have moved for summary judgment pursuant to RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS ("RCFC") 56(c). For the reasons set forth below, the court denies defendant's motion and grants summary judgment in favor of plaintiff.

### II. FACTUAL AND PROCEDURAL BACKGROUND

On September 15, 1985, plaintiff filed an application for a tentative refund in the amount of $18,682,973 from its 1981 tax year, based on its assertion of a NOL carryback[3] from its 1984 tax year.[4] JSF ¶ 8. Twelve days later, the IRS allowed the carryback and issued the tentative refund. *Id.* The IRS then made other, unrelated adjustments in 1987 and 1989 to plaintiff's 1981 return. JSF ¶¶ 9–10.

On January 23, 1991, the IRS determined that the amount of plaintiff's claimed carryback from 1984 to 1981 was incorrect. JSF ¶ 11. The IRS reversed roughly two-thirds

---

**1.** *Coca–Cola Co. v. Comm'r,* No. 17171–91 (Jan. 8, 1997).

**2.** A "net operating loss" or "NOL" is defined as an "excess of deductions . . . over the [taxpayer's] gross income" for a particular tax year. I.R.C. § 172(c).

**3.** The taxpayer may "carry back" a NOL and apply it as a deduction to a previous tax year's gross income. I.R.C. § 172(a)-(b). The ensuing reduction in tax liability typically gives rise to an "overpayment," i.e., a situation in which the taxpayer has now paid more in tax than is properly due. *See Jones v. Liberty Glass,* 332 U.S. 524, 531, 68 S.Ct. 229, 92 L.Ed. 142 (1947) ("[W]e read the word 'overpayment' in its usual

sense, as meaning any payment in excess of that which is properly due."); *Marsh & McLennan Cos., Inc. v. United States,* 302 F.3d 1369, 1372 (Fed.Cir.2002) ("An 'overpayment' occurs when a taxpayer 'has paid as an installment of the tax more than the amount determined to be the correct amount of such installment.'" (quoting I.R.C. § 6403)). *See generally* I.R.C. § 6401 (titled "Amounts treated as overpayments").

**4.** Prior to August 5, 1997, a taxpayer could carry back a NOL three years. I.R.C. § 172(b)(1)(A) (1997). Today, a taxpayer may carry back a NOL only two years. I.R.C. § 172(b)(1)(A).

of that carryback ($12,448,079), thereby increasing plaintiff's 1981 tax liability. *Id.* Using transfers from previous and subsequent tax year accounts, plaintiff paid $9,772,827 in additional tax and $3,780,719 in deficiency interest. *Id.* On April 8, 1991, plaintiff filed a claim for a refund of $13,086,842 plus interest. JSF ¶ 12.

On January 8, 1997, in a suit initiated by plaintiff, a stipulated decision of the United States Tax Court determined that there was "an overpayment in income tax for the taxable year 1981 in the amount of $12,352,648 ... which amount a claim for refund was filed on April 8, 1991." *Coca–Cola Co. v. Comm'r,* No. 17171–91, slip op. at *1 (Jan. 8, 1997).[5] Pursuant to this decision, on May 19, 1997, the IRS abated $12,352,648 in taxes and $5,531,965.47 in deficiency interest. JSF ¶ 14. This abatement originated from an increase in the carryback that plaintiff initially asserted in 1985. JSF ¶ 15. However, the IRS did not post any overpayment interest to plaintiff's 1981 tax account. *Id.* Plaintiff filed its complaint in this court on May 6, 2003, claiming $2,749,852.98 in interest based on the interim overpayment of $12,352,648 that existed between March 15, 1985 and September 27, 1985 after the IRS abated plaintiff's 1981 taxes.[6] Compl. ¶ 15; Pl.'s Resp. at 9–13.

Prior to this court's order of September 24, 2008, defendant asserted that the Tucker Act's six-year statute of limitations, set forth at 28 U.S.C. § 2501,[7] barred plaintiff's claim in this court. *See* Def.'s Br. at 14–16. Defendant argued that the statute of limitations on plaintiff's claim for overpayment interest began to run on September 27, 1985, the date on which the IRS originally paid plaintiff its tentative refund. Def.'s Br. at 16 ("Any such claim ... ought to have been filed before

September 27, 1991, to have come within the six-year statute of limitations."). Defendant maintained that position because defendant interpreted plaintiff's complaint as asserting that the "overpayment refunded to plaintiff on September 27, 1985 ... ought to have borne interest"—a characterization that plaintiff vehemently denied. Def.'s Br. at 15–16; *see* Pl.'s Resp. at 22 ("[The above statement] is not the position of the plaintiff. It is not found in the record.").

Plaintiff agreed that § 2501 governed this suit, but disagreed as to when its claim began to accrue. *See* Pl.'s Resp. at 21. Plaintiff argued that a claim for overpayment interest begins to accrue when "a reasonable taxpayer should have become aware that [its] cause of action started to accrue." *Id.* Thus, plaintiff concluded that its claim began to accrue no earlier than May 19, 1997—the date on which the IRS abated plaintiff's tax, thereby placing plaintiff on notice of its claim for overpayment interest. *Id.* While plaintiff's assertion was correct under the common law, it was incorrect with regard to a claim for overpayment interest. *See Barnes v. United States,* 133 Ct.Cl. 546, 548–49, 137 F.Supp. 716 (1956) (holding that a claim for interest accrues when the Commissioner of Internal Revenue [the predecessor to today's IRS] signs the schedule of overassessments, and "the fact ... plaintiff was not notified of the Commissioner's action ... does not prevent the [claim's] accrual"); *Gen. Instrument Corp. v. United States,* 33 Fed.Cl. 4, 8 (1995) (holding that in a claim for overpayment interest, the common law doctrine governing the accrual of claims is "ultimately irrelevant").

In its September 24, 2008 order, this court, *sua sponte,*[8] raised the possibility that nei-

---

5. Joint Ex. 3 at 1.

6. After the abatement, plaintiff's 1981 tax account reflected an overpayment of $11,855,397 as of March 15, 1990. JSF ¶ 16. This overpayment was transferred on May 25, 1997 to plaintiff's 1982 tax account with an effective date of March 15, 1990. *Id.*

7. 28 U.S.C. § 2501 provides, in pertinent part, that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be

barred unless the petition thereon is filed within six years after such claim first accrues."

8. Unlike most statutes of limitations, which are typically treated as affirmative defenses, § 2501 is "a jurisdictional requirement for a suit in the Court of Federal Claims." *John R. Sand & Gravel Co. v. United States,* 457 F.3d 1345, 1354 (Fed.Cir.2006), *aff'd,* 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008). As such, this court has an ongoing duty to address, even *sua sponte,* any issue related to § 2501's application to the instant case. *See, e.g., Folden v. United States,*

ther party was correct. Order at 1. The court explained that "plaintiff's claim for statutory interest likely accrued, and therefore, the statute of limitations began to run, on the date an authorized official signed the scheduling (e.g., Form 2188 [9] or its equivalent) of the May 19, 1997 abatement of plaintiff's 1981 taxes." Order at 4 (citing *Barnes*, 133 Ct.Cl. at 548, 137 F.Supp. 716 ("[w]hen the Commissioner signed the schedule of overassessments . . ., plaintiff's credit was allowed and its cause of action for interest due on this credit matured and accrued at that time"); *Gen. Instrument Corp.*, 33 Fed. Cl. at 8 ("the six-year statute of limitations . . . began to run on the date that the overassessment was scheduled")). However, the court noted that "neither party ha[d] proffered evidence as to when the overpayment was scheduled." *Id.* Accordingly, "out of an abundance of caution and with due regard to fairness," the court ordered the parties to address its concerns regarding subject matter jurisdiction in supplemental briefing. Order at 1, 5.

On March 16, 2009, the parties submitted a joint response, in which they agreed that plaintiff's claim accrued when an IRS official signed the Form 2188 scheduling the May 19, 1997 abatement of plaintiff's 1981 taxes. J. Resp. at 2–3. The parties also agreed (and supplied supporting documentation) that the IRS official signed the relevant Form 2188 on May 19, 1997. J. Resp. at 3. Thus, the parties concluded that "plaintiff's cause of action based on the 1997 refund accrued on May 19, 1997," less than six years before May 6, 2003—the date on which plaintiff filed its complaint in this court. *Id.* Given these stipulations, the court is comfortable that § 2501 does not bar plaintiff's claim, and, accordingly, turns to the merits of the parties' cross-motions for summary judgment.

379 F.3d 1344, 1354 (Fed.Cir.2004) ("[s]ubject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte* "); *Consol. Coal Co. v. United States*, 351 F.3d 1374, 1378 (Fed.Cir.2003) ("under federal rules any court at any stage in the proceedings may address jurisdictional issues").

9. IRS Form 2188 is titled "Voucher and Schedule of Overpayment and Overassessment."

## III. DISCUSSION

■ A court may only grant summary judgment where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where, as here, the parties have submitted cross-motions, the court is not compelled to grant summary judgment for one side or the other. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed. Cir.1988). In other words, "rejecting one does not mean that the other is justified." *Res. Invs., Inc. v. United States*, 85 Fed.Cl. 447, 467 (2009) (citing *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968)). Therefore, "the court must evaluate each motion on its own merits." *Soo Line R.R. Co. v. United States*, 44 Fed.Cl. 760, 762 (1999) (citing *Thermocor, Inc. v. United States*, 35 Fed.Cl. 480, 485 (1996)).

The parties in this case have winnowed their dispute to the following question of law: "[W]hether plaintiff is now entitled to be paid interest on the overpayment of its 1981 corporate taxes that existed between March 15, 1985 and September 27, 1985." Def.'s Reply at 3; *see* Pl.'s Resp. at 3–4 ("[T]he question presented by the instant case is quite simple: Whether an interim overpayment of tax (between March 15, 1985 and September 27, 1985 . . .) is entitled to overpayment interest."). Before this court can determine whether defendant owes plaintiff interest on plaintiff's 1985 overpayment, it must first review the governing statutory framework and examine how this framework has led to the dispute before the court today.

Section 6411 allows a taxpayer incurring a NOL carryback [10] to file for a tentative refund [11] of the resulting overpayment in lieu of filing a regular claim for refund under

10. Section 6411 also permits taxpayers to assert capital loss carrybacks and business credit carrybacks in the same manner. I.R.C. § 6411(a).

11. For corporations, the appropriate application is a Form 1139.

§ 6402. I.R.C. § 6411(a). Where a taxpayer elects to proceed under § 6411, the IRS must, within 90 days: (1) make a limited examination of the taxpayer's application for omissions and errors; (2) apply the resulting decrease in tax liability against the taxpayer's unpaid taxes; and (3) refund the balance. I.R.C. § 6411(b); BORIS I. BITTKER & LAWRENCE LOKKEN, FEDERAL TAXATION OF INCOME, ESTATES, AND GIFTS ¶ 25.10.7 (3d ed.1999) [hereinafter BITTKER & LOKKEN]. Indeed, the only basis upon which the IRS may deny a taxpayer's § 6411 application is if the IRS examiner determines that it contains omissions or errors that cannot be corrected within the 90–day period. *Columbia Gas Sys. v. United States,* 32 Fed.Cl. 318, 323 (1994), *aff'd,* 70 F.3d 1244 (Fed.Cir.1995). In sum, § 6411 "gives certain taxpayers the right to seek an expedited refund, and it creates a presumption in favor of payment." *Id.*

However, proceeding under § 6411 is not without some risk. Should the IRS deny the tentative refund application, whether in whole or in part, the taxpayer may not challenge the denial in any proceeding. 26 C.F.R. ("Treas.Reg.") § 1.6411–3(c). The taxpayer's only remaining avenue of redress is to file a regular claim under § 6402. *Id.* And, of course, only after the IRS denies the § 6402 claim (or fails to timely act upon it) may the taxpayer seek judicial review. *Id.;* *see also* I.R.C. § 7422(a) ("No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, ... until a claim for refund or credit has been duly filed with the Secretary...."). Thus, filing for a tentative refund can delay judicial review and any possible recovery.

Moreover, even if the IRS initially issues the tentative refund, it nevertheless retains the right to conduct a more thorough audit of the taxpayer's application later and recapture any funds that it has erroneously paid. I.R.C. § 6213(b)(3); *see also* Instructions for Form 1139 (Rev. March 2009) ("The payment

of the requested refund does not mean the IRS has accepted the application as correct."). In such circumstances, the IRS may immediately assess the erroneously-refunded amount as if it resulted from a mathematical or clerical error appearing on the return. I.R.C. § 6213(b)(3). This treatment allows the IRS to assess the resulting increase in tax liability immediately "without regard to whether the taxpayer has been mailed a prior notice of deficiency." Treas. Reg. § 301.6213–1(b)(2). And, again, the taxpayer may not challenge the recapture until it has first filed a regular claim under § 6402. *Id.*

■ While a tentative refund application under § 6411 does not constitute a claim upon which the taxpayer may maintain a suit in court, it can trigger government liability for overpayment interest. *See Columbia Gas Sys.,* 32 Fed.Cl. at 323 ("A Form 1139 application for a tentative refund does not, for most purposes, constitute a claim for refund. The exception is with respect to interest ...." (internal citation omitted)). Namely, § 6411(a) provides: "Except for purposes of applying [§ ] 6611(f)(4)(B),[12] an application under this subsection shall not constitute a claim for credit or refund." Generally speaking, § 6611 is the statute that governs the payment of interest on overpayments. *See* I.R.C. § 6611 (titled "Interest on overpayments"). Thus, for the limited purposes of determining entitlement to overpayment interest, a tentative refund application also acts as a claim for refund.

Section 6611(a) sets forth the general rule that "[i]nterest shall be allowed and paid upon any overpayment in respect of any internal revenue tax." For purposes of calculating interest on an overpayment due to a NOL carryback, the overpayment is "deemed not to have been made prior to the filing date for the taxable year in which [the NOL] ... arises."[13] I.R.C. § 6611(f)(1). However, no interest is due if the IRS refunds the overpayment within 45 days after the due date (without extensions) of the return on which

---

12. When plaintiff filed its tentative refund application in 1985, this section was codified at § 6611(f)(3)(B). I.R.C. § 6411(a) (1985). However, for our purposes, the two sections are materially identical.

13. For the 1984 tax year—i.e., the tax year in which plaintiff's NOL arose—the filing date was March 15, 1985. Pl.'s Mot. Summ. J. at 9.

the overpayment is shown or, if later, 45 days after the date the taxpayer actually filed the return. I.R.C. § 6611(e)(1); BITTKER & LOK-KEN ¶ 114.1.2. How § 6611's 45–day rule applies to a § 6411 tentative refund application is far from straightforward[14] and thus requires some explanation.

Rather than set forth a rule stating that no interest is allowed on an overpayment attributable to a NOL carryback if the IRS refunds the overpayment within 45 days of the taxpayer filing its claim, the Code reaches the same result via § 6611(f)(4)(B). Section 6611(f)(4)(B) first deems an overpayment attributable to a NOL carryback as an overpayment for the "loss year," i.e., as an overpayment for the year in which the taxpayer sustained the NOL. *See* I.R.C. § 6611(f)(4)(B)(i)(I), (ii). Then it treats the return for the loss year as not filed until the taxpayer files the claim for the overpayment itself. *See* I.R.C. § 6611(f)(4)(B)(i)(II). And, as noted above, the Code treats § 6411 tentative refund applications in the same manner as § 6402 claims when applying the 45–day rule. *See* § 6411(a) ("Except for purposes of applying [§ ] 6611(f)(4)(B), an application under this subsection shall not constitute a claim for credit or refund."); *Soo Line R.R. Co.*, 44 Fed.Cl. at 762 ("There is no dispute that the IRS paid plaintiff the ... amount of its requested tentative allowance ... within 45 days. Therefore, under the terms of [§ ] 6611(e) plaintiff was not entitled to any interest on its original tentative allowance claim.").

With the above statutory framework in mind, the court can now focus on the dispute at hand. When the IRS issued plaintiff's tentative refund on September 27, 1985, a mere twelve days after plaintiff's September 12, 1985 application, § 6611's 45–day rule blocked plaintiff's entitlement to overpayment interest. *See* § 6611(e). Six years later, on January 23, 1991, when the IRS audited and recaptured the majority of this refund, plaintiff's only avenue of redress was to file a regular § 6402 claim, *see* Treas. Reg. § 301.6213–1(b)(2), which it did on April 8, 1991. JSF ¶ 12. It is undisputed that the

IRS failed to issue a refund within 45 days of this claim. JSF ¶¶ 13–14. Indeed, the IRS did not issue any refund until plaintiff first secured a stipulated decision of the Tax Court on January 8, 1997. *Id.* The stipulated decision is very specific, stating that "there [was] an overpayment in income tax for the taxable year 1981 in the amount of $12,352,648 ... *which amount a claim for refund was filed on April 8, 1991." Coca–Cola Co.*, No. 17171–91, at *1 (emphasis added). Moreover, that decision does not address plaintiff's 1985 tentative refund application. Thus, it was the six-years-unpaid claim from 1991 that led to the overpayment in plaintiff's 1981 tax account, and it is the 1991 claim that entitles plaintiff to overpayment interest today. *See* § 6611(a).

Defendant urges this court to disregard the 1991 claim and instead focus on the ephemeral 1985 tentative refund. *See* Def.'s Reply at 5 n. 10 ("[P]laintiff forcefully insists that the relevant 'claim' is that filed in 1991 as a formal claim for refund. [I]n the final analysis it makes no difference...."). Defendant argues that because the IRS originally returned the requested amount within § 6611(e)'s 45–day grace period, no interest is now due. *See* Def.'s Br. at 9–10 ("Plaintiff was paid a refund within 45 days of requesting it. The statute looks to this—and only this—in commanding that no interest should run against the Government."). Assuming this court could look past plaintiff's statutory entitlement to overpayment interest based on its 1991 claim—which it cannot—defendant's interpretation of § 6611(e) is entirely unreasonable and would lead to absurd results.

While statutory interpretation begins with the statute's text, structure, and purpose, ultimately, "it is the reasonableness of the interpretation that controls." *See Prati v. United States*, 81 Fed.Cl. 422, 430–31 (2008) (citing *Warner–Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1355 (Fed.Cir.2003)). Section 6611(e)'s text does, in fact, provide that "if any overpayment of tax ... is refunded within 45 days ... no interest shall be allowed." But surely the term "refunded" necessarily implies that the taxpayer was permitted to

---

14. Indeed, Judge Christine Miller of this court previously observed that § 6611 is "not a model of clarity." *Marsh & McLennan Cos., Inc. v. United States*, 50 Fed.Cl. 140, 143 (2001).

keep the amount returned. To "refund" means "[t]o make return or restitution of (a sum received or taken); to hand back, repay, restore." 13 OXFORD ENGLISH DICTIONARY 493 (2d ed.1989). Defendant's wooden interpretation of § 6611(e) demands that this court ignore subsequent events—specifically, the IRS's 1991 recapture. Indeed, the IRS did not restore plaintiff at all, recapturing and withholding money from January 23, 1991 to May 19, 1997 to which plaintiff was rightfully entitled. JSF ¶¶ 11, 14.

At best, defendant has raised some doubt as to what exactly constitutes a "refund" for purposes of § 6611.[15] But, "[e]ven assuming the existence of doubt, it is established that, in a tax refund case, the doubt should be resolved in favor of the taxpayer." *Auto–Ordnance Corp. v. United States*, 822 F.2d 1566, 1571 (Fed.Cir.1987) (citing *White v. Aronson*, 302 U.S. 16, 20, 58 S.Ct. 95, 82 L.Ed. 20 (1937)); *see Citizens Nat'l Bank of Waco*, 213 Ct.Cl. 236, 551 F.2d 832, 843 (1977) ("While we have no doubt as to the meaning of the provisions of the Code involved here as applied to the facts of this case, should there be any doubt it must be resolved in favor of the taxpayer."). This presumption favoring the taxpayer has, at its historic origins, the idea that courts should not interpret tax provisions expansively, i.e., "beyond the clear import of the language used [by Congress]." *United States v. Wigglesworth*, 28 F.Cas. 595, 596–97 (D.Mass. 1842); *see, e.g., Am. Net & Twine Co. v. Worthington*, 141 U.S. 468, 474, 12 S.Ct. 55, 35 L.Ed. 821 (1891); *United States v. Isham*, 84 U.S. (17 Wall.) 496, 504, 21 L.Ed. 728 (1873). Moreover, if this court were to adopt defendant's position, the IRS could routinely issue tentative refunds within 45 days of taxpayers' claims, recapture those refunds the next day, and thus escape *any* potential liability under § 6611(a) for overpayment interest. Section 6611 cannot be so impotent. *See* Rev. Proc. 60–17, 1960–2 C.B. 942 ("The

payment of interest is *mandatory* on ... overpayments of any internal revenue tax *unless specifically prohibited* by law or by mutual agreement." (emphases added)).

Defendant relies heavily on *Soo Line R.R. Co. v. United States*, 44 Fed.Cl. 760 (1999), for its position. *See* Def.'s Br. at 10–12 ("*Soo Line* ... decides the precise question presented by this case, on facts indistinguishable from those of the case at bar."); Def.'s Reply at 5 (citing *Soo Line* for the proposition that "[p]laintiff was ... entitled to no interest [in 1985], and subsequent events [i.e., the 1991 recapture] have done nothing to change the objective reality of that fixed, unchanged, time sequence, to which [§ 6611(e)] refers"). However, *Soo Line* is easily distinguishable and, if anything, supports plaintiff's position.

The plaintiff in *Soo Line* filed its application for a tentative refund on September 20, 1984, in the amount of $2,860,785 from its 1980 tax year, based on its assertion of a NOL carryback from its 1983 tax year. 44 Fed.Cl. at 761. Twenty-two days later, the IRS allowed the carryback and issued the tentative refund. *Id.* Thus, by operation of § 6611(e)'s 45–day rule, plaintiff was not entitled to overpayment interest at that time. *Id.* Two months later, the *Soo Line* plaintiff filed suit in Tax Court seeking other adjustments to its 1980 tax liability. *Id.* The suit ultimately resulted in a stipulated decision which determined that plaintiff had underestimated its 1983 NOL carryback by $2,815,573. However, that stipulated decision also determined that plaintiff had an offsetting increase in its tax liability of $3,260,582. *Id.* Thus, plaintiff had, in fact, only overpaid its 1980 taxes by $2,415,776. *Id.* Given that the IRS had already issued plaintiff a tentative refund of $2,860,785, plaintiff's tax account was left with an *underpayment* of $445,009. *Id.* at 762 (emphasis added).

---

**15.** Defendant has not set forth, nor argued in favor of, a contrary IRS interpretation of the term "refund." Thus, this is not a situation in which the court must accord defendant's interpretation any degree of deference. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) ("If ... the court determines Congress

has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.").

On September 16, 1996, the *Soo Line* plaintiff filed suit in the Court of Federal Claims seeking interest on the $2,415,776 overpayment. *Id.* The court held that it could not ignore the prior tentative refund of $2,860,785, which the IRS had issued within 45 days of plaintiff's application. *See id.* at 763 ("To suggest that the prior payment is not relevant defies common sense."). Ultimately, the *Soo Line* court held:

> [A]warding plaintiff interest now on the IRS-adjusted amount would render [§ ] 6611(e) a nullity in this case. Having paid plaintiff a tentative allowance greater than the amount plaintiff was eventually owed within 45 days in 1984, the government is correct in asserting that [§ ] 6611(e) bars interest on the $2.4 million that should have been paid.
>
> In such circumstances, the court sees no basis upon which to award plaintiff the interest payment it seeks. To be sure, if the IRS adjusted overpayment had exceeded the earlier tentative allowance, interest would be owed on the difference. Indeed, defendant concedes this point. However, where as here, plaintiff sought and obtained a tentative allowance and was paid within 45 days in an amount greater that the IRS-adjusted amount, an award of interest now on the IRS-adjusted amount would render [§ ] 6611(e) meaningless. If plaintiff was not entitled to interest on the earlier tentative allowance, it should not get interest now on an amount less than its original claim.

*Id.* at 763–64.

What distinguishes *Soo Line* from the instant case is that there, the IRS tentatively refunded and permitted the *Soo Line* plaintiff to retain an amount greater than that to which it was entitled. *Id.* at 761–62. In other words, after the IRS made the necessary adjustments to the *Soo Line* plaintiff's tax account, the account reflected an *underpayment*. *Id.* at 762. In the instant case, the IRS's tentative refund, errant recapture, and subsequent abatement caused an *overpayment* in plaintiff's tax account; i.e., the IRS permitted the plaintiff to retain an amount less than that to which it was entitled. JSF ¶ 16.

Despite these converse factual circumstances, the *Soo Line* opinion is, nevertheless, instructive. If awarding interest in *Soo Line* "would render [§ ] 6611(e) a nullity," 44 Fed.Cl. at 763, failing to award interest in the present case would similarly castrate § 6611(a). Just as the *Soo Line* court could not "ignore" the prior tentative refund, *id.*, this court cannot "ignore" the IRS's subsequent recapture of plaintiff's tentative refund. JSF ¶ 11. To borrow a phrase, "to suggest that the [recapture] is not relevant defies common sense." *Soo Line*, 44 Fed.Cl. at 763.

To be sure, defendant is correct when it states: "The imposition of interest to be paid by the [g]overnment is not favored, and is never imposed by implication, in the absence of a clear and unmistakable command to do so." Def.'s Br. at 3 (citing *Library of Congress v. Shaw*, 478 U.S. 310, 318, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986); *Rosenman v. United States*, 323 U.S. 658, 663, 65 S.Ct. 536, 89 L.Ed. 535 (1945)). However, § 6611(a) is such a command—it emphatically provides that "[i]nterest *shall* be allowed and paid upon any overpayment in respect of any internal revenue tax." I.R.C. § 6611(a) (emphasis added); *see Anderson v. Yungkau*, 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947) ("The word 'shall' is ordinarily '[t]he language of command.'" (quoting *Escoe v. Zerbst*, 295 U.S. 490, 493, 55 S.Ct. 818, 79 L.Ed. 1566 (1935))).

Plaintiff filed its claim for refund in 1991. JSF ¶ 12. The IRS did not issue the requested refund within 45 days. JSF ¶¶ 12–13. Plaintiff brought suit and established, six years later, that it was entitled to the refund. JSF ¶ 13. Therefore, § 6611 dictates that the defendant must pay plaintiff interest on its overpayment. *See* § 6611(a), (e).

Having established defendant's liability for overpayment interest, the court turns to plaintiff's claim for relief. Plaintiff submitted uncontroverted evidence, in the form of an expert's affidavit, of the amounts the defendant owes. *See* Silverman Aff. at 1–8. Specifically, the affidavit supports plaintiff's claim for $162,263.62 in overassessed deficiency interest and $2,587,589.36 in allowable

overpayment interest through June 30, 2003. Compl. ¶ 15; Silverman Aff. Ex. I. The court has reviewed the expert's affidavit, and after finding no fault with it, adopts the expert's conclusions as its own.

## IV. CONCLUSION

Accordingly, plaintiff's motion for summary judgment is **GRANTED.** Defendant's motion for summary judgment is **DENIED.** Defendant shall pay plaintiff $162,263.62 in overassessed deficiency interest and $2,587,589.36 in allowable overpayment interest through June 30, 2003, plus additional interest thereon until paid.

**IT IS SO ORDERED.**